UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CLEVELAND B. WILLIAMS,

     Plaintiff,

v.                              Case No:  2:16-cv-234-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

Before the Court is Plaintiff Cleveland Williams' Amended Complaint (Doc. 14) filed on

May 18, 2016.  Plaintiff seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("SSA") denying his claim for supplemental security income.

The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr."

followed by the appropriate page number), and the parties filed legal memoranda in support of

their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED**

pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.**     **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

     **A.**     **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment that can be expected to result in

death or that has lasted or can be expected to last for a continuous period of not less than twelve

months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

The impairment must be severe, making the claimant unable to do his previous work or any other

substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2),

1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## B.    Procedural History

On January 7, 2013, Plaintiff filed an application for supplemental security income ("SSI"). (Tr. at 90, 155-160). Plaintiff asserted an onset date of August 30, 2012. (*Id.* at 155). Plaintiff's application was denied initially on March 7, 2013, and on reconsideration on April 29, 2013. (*Id.* at 90, 98). A hearing was held before Administrative Law Judge ("ALJ") Denise Pasvantis on January 23, 2015. (*Id.* at 29-56). The ALJ issued an unfavorable decision on May 14, 2015. (Tr. at 12-21). The ALJ found Plaintiff not to be under a disability since January 7, 2013, the date the application was filed. (*Id.* at 20).

On January 29, 2016, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-7). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on March 25, 2016 and an Amended Complaint (Doc. 7) On April 4, 2016. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 29).

## C.    Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment;

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

(3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that at step one of the sequential evaluation, Plaintiff had not engaged in substantial gainful activity since January 7, 2013, the application date. (Tr. at 14). At step two, the ALJ found that Plaintiff suffered from the severe impairments of anatomic deformity at L5-S1 and mild lumbar scoliosis (20 C.F.R. § 416.920(c)). (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Tr. at 15). At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC"):

> to lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for a total of six hours in an eight[-]hour workday; sit for a total of six hours in an eight[-]hour workday; push and/or pull unlimited, other than as shown for lift and/or carry; and frequently climb ramps and stairs, ladders, ropes, and scaffolds.

(*Id.*). The ALJ determined that Plaintiff has no past relevant work. (*Id.* at 19). After consider Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*). These jobs include cleaner, laundry worker, and warehouse worker. (*Id.* at 20). The ALJ concluded that Plaintiff was not under a disability from January 7, 2013, the application date. (*Id.*).

### D.      Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. §405(g).  Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.      Analysis

On appeal, Plaintiff raises four issues.  As stated by Plaintiff, they are:

1)       Whether the Administrative Law Judge (ALJ) properly assessed the Plaintiff's RFC given that she failed to include as severe impairments or even as medically determinable impairments the Plaintiff's chronic headaches, right leg and knee pain, back pain, dizziness, and pterygium; given that she did not address findings of the State agency indicating that the Plaintiff could not perform the full range of even sedentary work; given that she did not include as severe impairments

chronic low back pain, right leg pain, and status-post back and right leg fractures secondary to a motor vehicle accident as a pedestrian at the age of seven, which were conclusively determined as severe in a prior binding decision; and given that she did not consider whether such impairments together with the Plaintiff's acknowledged severe limitations would combine to preclude Substantial Gainful Activity (SGA).

2)    Whether the ALJ erred in not obtaining a Psychiatric Review Technique Form (PRTF) and conducting a Mental Residual Function Capacity (MRFC) assessment given there is evidence in the record of Plaintiff's difficulties with insight, attention/concentration, and stress.

3)    Whether the Acting Commissioner met her burden of showing that there is a significant number of jobs that exist in the national economy which Plaintiff could perform given that the ALJ failed to include any limitations related to the Plaintiff's chronic headaches, right leg and knee pain, back pain, dizziness, and pterygium in the hypothetical question to the vocational expert ("VE") and given that in order for the VE's testimony to constitute substantial evidence, the ALJ was required to pose a hypothetical question, which comprised all of the Plaintiff's limitations.

4)    Whether the ALJ erred in not considering that Plaintiff implicitly requested reopening the SSI case filed by the Plaintiff on December 9, 2010, given that the new application on January 7, 2013, was less than two years after the Initial Determination on that prior application on February 4, 2011, and given that good cause was shown by the furnishing of new and material evidence relevant to the time period covered by that prior application.

(Doc. 35 at 1-2).  The Court will address each issue in turn.

**A.    RFC Determination**

Plaintiff argues that the ALJ erred in dismissing Plaintiff's chronic headaches, right leg and knee pain, and dizziness.  (*Id.* at 9).  Further, Plaintiff argues that the ALJ erred in failing to mention Plaintiff's right eye pterygium (dry eye) and chronic back pain.  (*Id.* at 9-10).  Plaintiff claims that the ALJ erred in failing to order a neurological workup for Plaintiff's dizziness and failed to include all of Plaintiff's limitations in the RFC.  (*Id.* at 11).  Plaintiff also argues that the ALJ failed to address a State Agency finding that Plaintiff could not perform his past relevant work and, thus, made an implicit determination that Plaintiff's RFC was for less than a full range of sedentary work.  (*Id.* at 11-12).  In addition, Plaintiff argues that a prior decision by

Administrative Law Judge Steven Slahta decided on September 4, 2008 "conclusively determined" that Plaintiff had the severe impairments of chronic low back pain, right leg pain, and status-post back and right leg fractures secondary to a motor vehicle accident as a pedestrian at the age seven. (*Id.* at 12). Plaintiff contends these findings are binding on the ALJ here. Finally, Plaintiff argues that the ALJ's decision demonstrates bias as to Plaintiff's failure to look for work. (*Id.* at 13). The Commissioner responds that substantial evidence supports the ALJ's RFC determination. (Doc. 37 at 4). The Court will discuss each issue raised by Plaintiff as to the ALJ's RFC determination in turn.

### 1. Consideration of Impairments

Plaintiff argues that the ALJ dismissed Plaintiff's chronic headaches, right leg and knee pain, and dizziness and failed to mention or address Plaintiff's right eye pterygium and chronic back pain. The Commissioner responds that the ALJ did not find that Plaintiff's headaches, leg pain, knee pain, pack pain, dizziness, and eye pterygium to be severe impairments and found no evidence in the record to support the claim that these impairments caused functional limitations. (Doc. 37 at 5). Further, the Commissioner contends that the ALJ specifically found that Plaintiff's complaints for right leg and knee pain, headaches, and dizziness "fail to produce more than a minimal effect on the claimant's ability to perform basic work activities." (Tr. at 15).

The severity of a claimants impairments is analyzed at step two of the sequential evaluation,. At this step, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve

months.  *See* 20 C.F.R. §§ 404.1505(a).  This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight.  *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).  While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

In the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."  *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).  Rather, the ALJ is required to consider a claimant's impairments in combination, whether severe or not.  *Id.*  If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three.  *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

In this case, the ALJ found that Plaintiff had the severe impairments of anatomic deformity at L5-S1 and mild lumbar scoliosis.  (Tr. at 14).  Thus, the ALJ was not required to identify all of Plaintiff's severe impairments at step two.  *See Heatly*, 382 F. App'x at 825.  Notwithstanding, the ALJ is required to consider all of Plaintiff's impairments, whether severe or non-severe, in combination at step three.  *Id.*  Beginning with headaches and dizziness, the ALJ considered Plaintiff's testimony as to his constant headaches and dizziness and medical records concerning these impairments.  (*See* Tr. at 16, 18).  As to the right leg and knee pain and back pain, the ALJ also considered Plaintiff's testimony regarding these complaints and medical evidence concerning these impairments.  (*See id.* at 16, 17, 18).  Contrary to Plaintiff's argument, the ALJ references medical records concerning Plaintiff's right eye irritation and, thus,

considered this impairment as well. (*See id.* at 18). The ALJ found that although the record reflects these complaints, these complaints "fail to produce more than a minimal effect on claimant's ability to perform basic work activities." (*Id.* at 15). Thus, the ALJ did consider these impairments specifically and also considered them in combination with all of Plaintiff's symptoms and opinion evidence. (*See id.*). In addition, overall, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms to not be entirely credible. (*Id.* at 17).

Plaintiff also argues that the ALJ erred in failing to assign weight "to each item of impairment evidence." (Doc. 35 at 9). The Commissioner contends that an ALJ is not required to assign a weight to each piece of medical evidence but rather to medical opinions that are in evidence. (Doc. 37 at 8). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F3d 1176, 1178-79 (11th Cir. 2011). This requirement certainly does not rise to the onerous level of requiring an ALJ to assign weight to every piece of medical evidence in the record. In this case, the ALJ considered the subjective testimony of Plaintiff as well as the medical evidence relating to the impairments listed by Plaintiff and made her findings based on the evidence of record. The Court finds that the ALJ did not err by not assigning weight to each item of impairment evidence.

Accordingly, the Court finds that even if the ALJ erred in failing to find additional impairments severe, the error was harmless because the ALJ properly considered Plaintiff's impairments, whether severe or non-severe, in combination at step three of the analysis.

### 2. Ordering Neurologic Workup

Plaintiff briefly raises the argument that the ALJ should have ordered a neurological workup concerning Plaintiff's complaints of dizziness. (Doc. 35 at 10). Specifically, Plaintiff argues that the ALJ observed that Plaintiff "has not undergone a neurological workup for dizziness and no balance issues have been noted on examination" and from that statement Plaintiff concludes that the ALJ "implicitly acknowledges the potential severity of the Plaintiff's dizziness." (*Id.* at 10; Tr. at 15). The Commissioner responds that it is Plaintiff's burden to prove that he is disabled. (Doc. 37 at 7).

A plaintiff bears the burden of proving he is disabled and is responsible "for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing 20 C.F.R. §416.912(a)). However, an ALJ "has a basic duty to develop a full and fair record." *Id.* (citing 20 C.F.R. 416.912(d)). *See* 20 C.F.R. §404.1545(a)(3) ("However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources."). This duty applies whether or not the claimant is represented by counsel. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995).

An ALJ is not required to order a consultative examination "as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007). In addition, a plaintiff

must show prejudice before a court will find that a plaintiff's "'right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record.'" *Brown*, 44 F.3d at 934-35 (citing *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)). To determine if prejudice exists, the Court must determine if the record contains evidentiary gaps that will result in unfairness or clear prejudice. *Id*. at 935 (citing *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982)). "The lack of medical and vocational documentation supporting an applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits. We have no way of knowing whether the evidence missing from the case would sustain [claimant's] contentions of her inability to work." *Id*.

Here, Plaintiff failed to show that there was an evidentiary gap in the record. In her comment concerning dizziness, the ALJ simply supported her conclusion that dizziness was not a severe impairment especially in light of the lack of balance issues reported in the medical records. (*See* Tr. at 15). Thus, Plaintiff failed to establish clear prejudice and the Court finds that the ALJ did not err in failing to obtain a neurological workup.

### 3. Limitations

Without citation to authority, Plaintiff argues that the ALJ erred by failing to include limitations in the RFC that his symptoms are aggravated by ascending stairs, bending, extension, flexion, pushing, and standing. (Doc. 35 at 11). Plaintiff cites to a medical record from Florida Community Health Centers, Inc. that includes a subjective statement by Plaintiff that his symptoms are aggravated by these activities. (*See* Tr. at 281). No medical expert confirmed these limitations and, as stated, *supra*, the ALJ found Plaintiff's statements concerning intensity, persistence and limiting effects of his symptoms not to be entirely credible. (*Id.* at 17). Thus, the ALJ did not err in failing to include these limitations in Plaintiff's RFC.

### 4. State Agency Finding

Plaintiff contends that the ALJ failed to address a State Agency finding that Plaintiff "may no longer be capable of performing work such as you have performed in the past," arguing that Plaintiff's past relevant work was sedentary and, thus, the State Agency's determination implied an RFC of less than a full range of sedentary work. (Doc. 35 at 11-12). The Commissioner responds that the ALJ is required to consider determinations made by State Agency medical consultants and not, as in this case, a disability examiner. (Doc. 37 at 8). Further, the Commissioner argues that Plaintiff had no past relevant work because past relevant work is done within the past fifteen (15) years and Plaintiff was last employed in 1993. (*Id.* at 9).

First, the actual language of the State Agency's statement is that Plaintiff "*may* no longer be capable of performing work such as you have performed in the past." (Tr. at 108). This wording is not conclusive as to Plaintiff's ability to return to his past relevant work. Second, William Powell Gordon is the name that appears on this document, but there is no indication of his credentials as a medical professional. (*Id.*). Thus, the Court finds Plaintiff's argument unpersuasive.

Plaintiff also argues that SSR 96-6p supports her contention that the ALJ erred in failing to address the State Agency finding. (Doc. 35 at 11). The Court agrees with the Commissioner that SSR 96-6p concerns an ALJ's consideration of State Agency medical and psychological consultants *and not* a disability determination. *See* SSR 96-6P. Further, past relevant work must be performed within fifteen (15) years preceding the last date that a plaintiff met disability insured status. *See Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 954 (11th Cir. 2010).

Thus, in this case, Plaintiff has no past relevant work. (*See* Tr. at 19, 163). Therefore, the ALJ did not err in failing to address this State Agency finding.[2]

### 5.        Prior Decision

Plaintiff argues that his chronic low back pain, right leg pain, and status-post back and right leg fractures secondary to a motor vehicle accident as a pedestrian at the age of seven were conclusively determined by Administrative Law Judge Steven Slahta in his decision of September 4, 2008. (Doc. 35 at 12). Citing to non-binding authority, Plaintiff claims that this prior decision is *res judicata* as to these issues in this decision. (*Id.*). The Commissioner responds that Plaintiff neglects to mention that ALJ Slahta's prior decision in 2008 was not the most recent prior decision and, in fact, ALJ Pasvantis entered a prior decision on August 30, 2012 with different findings. (Doc. 37 at 9; Tr. at 72-80).

The Eleventh Circuit has held that *res judicata* does not attach to cases where "the factual time period for [the claimant's] current application is different from [the] previous application." *Luckey v. Astrue*, 331 F. App'x 634, 638 (11th Cir.2009); *McKinze v. Comm'r*, 362 F. App'x 71, 73 (11th Cir.2010). The time period covered in ALJ Slahta's decision was from July 15, 2003 through the date of the decision, September 4, 2008. (Tr. at 68). In the next decision by ALJ Pasvantis, Plaintiff alleged disability beginning January 1, 1992, but ALJ Pasvantis found

---

[2] Plaintiff added a footnote that the ALJ "discerned other impairments not reflected in her decision" citing to a portion of the transcript regarding the questioning of Plaintiff concerning his ability to fill out a check or pay a bill. (Doc. 35 at 12 n.4). Plaintiff states that "[t]his question clearly implied an impairment the ALJ was obligated to assess with regard to severity. A remand to get Plaintiff's school records would help address this issue." (*Id.*). Plaintiff provided no legal authority to support the contention that an ALJ is obligated to determine that Plaintiff's testimony constitutes an impairment, assess the severity of this alleged impairment, or remand this action to obtain Plaintiff's school records absent some support by the medical evidence of record. Plaintiff has the burden of showing that he is disabled through step four of the sequential analysis and, as to this issue, Plaintiff failed to meet his burden. *See Hines-Sharp*, 511 F. App'x 913, 915 n.2.

Plaintiff not disabled from December 9, 2010 through the date of the decision, August 30, 2012.[3] (*Id.* at 80).  In the present decision, the ALJ noted that Plaintiff filed for SSI on January 7, 2013, claiming an onset date beginning August 30, 2012.  (*Id.* at 12).  The ALJ found Plaintiff not disabled since January 7, 2013, the application date.  (*Id.* at 20).  Thus, the time period considered in the present decision does not overlap any of the time periods in the prior decisions. Accordingly, the ALJ did not err in failing to adopt or follow ALJ Slahta's findings.

### 6. Bias

Plaintiff argues that the ALJ demonstrated bias regarding Plaintiff's failure to look for work.  (Doc. 35 at 13).  Plaintiff claims that given his impairments due to a motor vehicle accident 30 years ago, Plaintiff would have a poor work history.  (*Id.*).  In her decision, the ALJ stated, "that the record reflects that the claimant has a poor work history, which raises some questions as to whether the current unemployment is truly the result of medical problems or a lack of motivation to work."  (Tr. at 19).  Under the regulations, an ALJ "shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision."  20 C.F.R. § 404.940.  Plaintiff failed to establish that the ALJ's comment concerning Plaintiff's poor work history demonstrates any bias on the part of the ALJ. Thus, the Court finds that the ALJ showed no bias when commenting on Plaintiff's work history.

For the reasons states above, as to the first issue and sub-issues raised by Plaintiff, the Court finds that the ALJ did not err and her opinion was supported by substantial evidence.

---

[3]  In this second application, Plaintiff filed an application under SSI only.  (Tr. at 72).  SSI is not payable prior to the month following the month in which the application was filed.  *See* 20 C.F.R. § 416.335.  Thus, even though Plaintiff alleged a much earlier onset date, Plaintiff is limited by his application date in any award of benefits.  *Id.*

**B.  Psychiatric Review Technique and Mental Residual Functional Capacity Forms**

Plaintiff argues that the ALJ erred in failing to have a Psychiatric Review Technique Form ("PRTF") and a Mental Residual Functional Capacity ("MRFC") form completed.  (Doc. 35 at 14, 15).  Plaintiff claims that his "poor" mental condition was raised by the evidence and, thus, the ALJ was required to ensure that the PRTF and MRFC forms were completed.  (*Id.* at 14).  The Commissioner contends in response that the ALJ found no mental medically determinable impairments and, thus, was not required to employ the special technique in order to determine whether any mental impairments were severe impairments or have the PRTF or MRFC forms completed.  (Doc. 37 at 10).

When evaluating mental impairments, the regulations require an ALJ to use the "special technique" dictated by the PRTF.  *Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005); 20 C.F.R. § 404.1520a-(a).  "This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas:  'activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.'"  *Moore*, 405 F.3d 1208, 1213–14; 20 C.F.R. § 404.1520a(c)(3)-(4).  An ALJ is required to incorporate the results of the PRTF into the findings and conclusions in the decision.  *Moore*, 405 F.3d 1208, 1213–14; 20 C.F.R. § 404.1520a-(e)(2).

Here, Plaintiff cites to a visit in February 2014 to the Florida Community Health Centers, a self-reporting form completed by Plaintiff, and a visit to Nader Daryaee, M.D on February 20, 2013 to support his claim of a poor mental condition.  (Doc. 35 at 14).  Starting with the record of the visit to Florida Community Health Centers, Inc. on February 19, 2014, this record includes the following information as to Plaintiff's mental state:  "The patient is oriented to time, place, person and situation.  The patient has poor insight, exhibits normal judgment, has poor attention

span and concentration (characterized as concentration disjointed) and does not have suicidal ideation." (Tr. at 268). Nevertheless, the final assessment includes a finding of lumbago only and makes no mention of any mental impairment. (*Id.*). Thus, this record does not support a finding of a mental impairment. Further, this assessment was conducted by Dorothy Ann Baker, PA-C, a certified physician's assistant. A non-acceptable medical source, such as a physician's assistant, cannot establish the existence of a medical determinable impairment. *See* SSR 06-03p. Although these "other sources" are entitled to consideration, their opinions may lend support to an impairment severity or functional effects, but may not be used to establish a diagnosis. *See* SSR 06-03p. Therefore, the Court finds that the ALJ did not err in consideration of this evidence of record.

Next, Plaintiff cites to his own self-report regarding his mental condition. (Doc. 35 at 14). In this report completed by Plaintiff, Plaintiff states that Dr. David Walters diagnosed him with ADHD and found he had difficulty focusing and being able to function in a work environment. (*Id.*; Tr. at 208). Plaintiff claims that Dr. Walters suggested a psychiatric evaluation, but Plaintiff was unable to afford it. (Tr. at 208). Plaintiff only cites to his own statement concerning Dr. Walters' opinion and fails to cite to the actual records of Dr. Walter's opinion. Further, the Court was unable to located Dr. Walters records in the medical evidence of record. Thus, the Court has no medical opinion of record to support Plaintiff's contentions concerning a mental impairment.

Lastly, Plaintiff cites to the consultative examination for the State Division of Disability Determination conducted by Dr. Daryaee. (Doc. 35 at 14). Dr. Daryaee noted Plaintiff's subjective complaints of depressed mood and difficulty sleeping. (Tr. at 241). Dr. Daryaee did not assess Plaintiff with any mental impairments. (*Id.* at 242).

In sum, Plaintiff failed to establish any mental impairments that would require the ALJ to follow the special technique outlined in 20 C.F.R. § 416.920 or require the ALJ to have the PRTF or MRFC completed. Accordingly, the ALJ did not err in failing to have a PRTF or MRFC completed and the ALJ's decision was supported by substantial evidence as to this issue.

### C. Hypothetical Question and Available Jobs

Plaintiff argues that the ALJ erred in relying on the vocational expert's testimony concerning the number of jobs in the economy that Plaintiff is able to perform. (Doc. 35 at 17-19). Further, Plaintiff asserts that the hypothetical question posed to the vocational expert did not include all of Plaintiff's limitations, the jobs identified required a reasoning level above Plaintiff's ability, and the hypothetical question did not contain the limitations found from a prior decision. (*Id.* at 19-21, 22).

### 1. Number of Jobs in Economy

Plaintiff contends that the employment numbers testified to by the vocational expert are not accurate. (Doc. 35 at 17). The Commissioner argues in response that the ALJ properly relied on the vocational expert's opinion. (Doc. 37 at 13). Using employment data available from SkillTRAN, through its program, Job Browser Pro, Plaintiff provides different employment data. (Doc. 35 at 17).

The vocational expert testified that Plaintiff was capable of performing the jobs of cleaner, laundry worker, and warehouse worker. (Tr. at 54-55). Relying on the Dictionary of Occupational Titles ("DOT"), the vocational expert testified that the job of cleaner had 700,000 jobs nationally, 35,000 jobs in the State of Florida, and local jobs in Miami, Dade, Broward and

Palm Beach counties of 2,300.  (*Id.* at 54, 55).[4]  Likewise, the vocational expert testified that the

job of laundry worker had 350,000 jobs nationally, 20,000 jobs in the State of Florida, and 1,500

in the local region.  (*Id.* at 55).  Finally, the vocational expert testified that the warehouse job had

480,000 jobs nationally, 35,000 in the State of Florida, and 2,500 in the local region.  (*Id.*).

Pursuant to 20 C.F.R. § 416.966(d), to determine whether jobs exist in the national

economy in significant numbers,

> we will take administrative notice of reliable job information available from various
> governmental and other publications.  For example, we will take notice of – (1)
> Dictionary of Occupational Titles, published by the Department of Labor; (2)
> County Business Patterns, published by the Bureau of the Census; (3) Census
> Reports, also published by the Bureau of the Census; (4) Occupational Analyses
> prepared for the Social Security Administration by various State employment
> agencies; and (5) Occupational Outlook Handbook, published by the Bureau of
> Labor Statistics.

20 C.F.R. § 416.966(d).  In this case, the vocation expert relied on the DOT to provide

employment data and the DOT is an acceptable source to provide this information.  Plaintiff's

source, Job Browser Pro, is not listed as an acceptable source for the vocational expert or the

ALJ to rely upon to determine if there are jobs in the national economy that Plaintiff can

perform.  Moreover, the ALJ specifically asked the vocational expert if testimony was consistent

with the DOT, and the vocational expert responded that it was.  (Tr. at 55-56).  Accordingly, the

ALJ properly relied on the vocational expert's opinion.  Thus, the ALJ did not err in relying on

---

[4]  Without citation to authority, Plaintiff states that he does not reside in the Miami-Dade,
Broward, or Palm Beach counties but rather resides in Glades County.  (Doc. 35 at 17).
According to Social Security Regulations, "[w]ork exists in the national economy when it exists
in significant numbers either in the region where you live or in several other regions of the
country.  It does not matter whether – (1) Work exists in the immediate area in which you live;
(2) A specific job vacancy exists for you; or (3) You would be hired if you applied for work."  20
C.F.R. § 404.1566(a).  The appropriate focus under the regulation is the national economy.  *See*
*Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987).  Thus, the vocational expert was permitted
to cite to the availability in jobs outside of Glades County and the ALJ did not err in relying on
this testimony.

the testimony of the vocational expert regarding employment data and her decision is supported by substantial evidence.

### 2. Hypothetical Posed as to Plaintiff's Limitations

Plaintiff argues that the hypothetical question posed to the vocational expert did not include all of Plaintiff's limitations. (Doc. 35 at 19). Specifically, Plaintiff claims that the hypothetical failed to include Plaintiff's chronic headaches, right leg pain, knee pain, back pain, dizziness, and right eye pterygium. (*Id.* at 19, 20). Plaintiff contends that the hypothetical also failed to include certain self-reported symptoms of weakness, numbness, and muscle spasms or limitations that were aggravated by ascending stairs, bending, extension, flexion, pushing, and standing. (*Id.* at 19). Further, Plaintiff contends that the ALJ erred in failing to include all of the limitations found in the prior decision of ALJ Slahta dated September 4, 2008. (*Id.*). Finally, Plaintiff argues that the ALJ erred in failing to include limitations as to Plaintiff's gait or use of a cane. (*Id.*). The Commissioner argues in response that ALJ properly included all limitations in the hypothetical to the vocational expert that the ALJ found were supported by the record. (Doc. 37 at 13-14).

At step five of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform. *Winchell v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). "The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004). An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a vocational expert to determine whether there are jobs that exist in the national economy that a claimant can perform. *Winchell*, 631 F.3d

at 1180. If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). An ALJ is not, however, required to include findings in the hypothetical that the ALJ found to be unsupported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

In the first hypothetical, the ALJ included the limitations found by the State Agency assessment for a person who was able to perform medium exertion who could frequently climb ramps or stairs, ladders, ropes, or scaffolds. (Tr. at 54). The State Agency assessment limited the individual to occasionally lifting 50 pounds, frequently lifting 25 pounds, standing or walking for 6 hours in and 8-hour workday, sitting for 6 hours in an 8-hour workday, and no limitations as to pushing or pulling. (*Id.* at 95). As stated in the RFC Determination section, *supra*, substantial evidence supports the ALJ's determination of Plaintiff's RFC, including the documentation that Plaintiff's symptoms of chronic headaches, right leg pain, knee pain, back pain, dizziness, and right-eye pterygium did not cause additional limitations not included in the RFC. Thus, the ALJ did not err in relying on jobs listed by the vocational expert, even if these jobs required visual acuity. Further, as determined, *supra*, the ALJ did not err in finding that certain symptoms were not aggravated by ascending stairs, bending, extension, flexion, pushing, and standing. Lastly, as determined, *supra*, the ALJ was not bound by the prior decision of ALJ Slahta dated September 4, 2008 because the time period of the present decision does not overlap the time period of ALJ Slahta's decision. The ALJ properly found these limitations supported by the record and, thus, was not required to include them in the hypothetical posed to the vocational expert.

Plaintiff also asserts that he experienced extreme weakness, "numbness in the extremity," back pain, antalgic gait, and muscle spasms and these limitations were not reflected in the hypothetical question posed to the ALJ. (Doc. 35 at 20). However, what Plaintiff identifies as "limitations" are actually symptoms. (*See* Tr. at 282-83). Further, the medical records Plaintiff claims support these limitations do not contain any information as to a diagnosis or limitations associated with these symptoms. (*See id.*). Therefore, the ALJ did not err in failing to include these symptoms as limitations in the hypothetical to the vocational expert.

Plaintiff next asserts that the ALJ erred by failing to include the additional limitations in the hypothetical question as to gait, reasoning level, and a need for a sit-stand option. (Doc. 35 at 21-23). As to gait, the medical records reflect negative gait disturbance and a lack of diagnosis as to gait problems. (*See* Tr. at 267, 271, 282-83). Further, the ALJ noted that Plaintiff used a cane, but also noted that it was given to Plaintiff 10 to 15 years ago and no treatment notes reflect the need for a cane. (Doc. 35 at 18). Second as to reasoning level, Plaintiff claims that all of the jobs require Plaintiff to be able to "[a]pply common sense understanding and to carry out detailed but involved written [or] oral instructions." (*Id.* at 22). Plaintiff cites to the following medical record in support of his lessened reasoning level: "The patient is oriented to time, place, person and situation. The patient has poor insight, exhibits normal judgment, has poor attention span and concentration (characterized as concentration disjointed) and does not have suicidal ideation." (Tr. at 268). As stated, *supra*, but bears repeating, this medical assessment nonetheless concluded in the final assessment a finding of lumbago only and makes no mention of any mental impairment. (*Id.*).

Plaintiff also argues that his dizziness and chronic headaches will lessen his ability to concentrate, but fails to cite any medical authority that supports the proposition that these

symptoms will cause this limitation. (Doc. 35 at 22). Third, Plaintiff claims that none of these jobs support a sit/stand option that was determined to be necessary in a prior decision. (*Id.*). Again, as stated *supra*, the ALJ was not required to adopt findings, including limitations, from prior rulings that do not cover the same time periods. The ALJ did not find that any of these alleged limitations to be supported by substantial evidence and the Court finds that ALJ's determination to be supported by substantial evidence. Thus, the Court finds that the ALJ did not err in failing to include these limitations in the hypothetical posed to the vocational expert.

The Court finds that the ALJ posed a hypothetical to the vocational expert that included all of the limitations found by the ALJ that were supported by the record. Thus, the ALJ did not err in formulating the hypothetical and in relying on the vocational expert's opinion in determining jobs that Plaintiff is capable of performing. The Court finds that the ALJ's decision to rely on the opinion of the vocational expert is supported by substantial evidence.

**D. Implicit Request to Reopen**

Plaintiff asserts that the instant application should be considered an implicit request to re-open the prior application of December 9, 2010, and argues that the ALJ erred in not assessing this prior period. (Doc. 35 at 23-25). Plaintiff states that the initial denial of his December 2010 application was rendered in February 2011, within two (2) years of the filing of the present application in January 2013. (*Id.* at 23-24). Plaintiff argues that medical records from Hendry Family Care Center dated September 22, 2011 through March 8, 2012 pertain to the time period covered by this prior August 30, 2012 decision. (*Id.* at 24). Further, the consultative examination by Dr. Daryaee is also new and material evidence relating to the time period in the August 30, 2012 decision. (*Id.* at 24-25). Thus, Plaintiff argues that the present application should be deemed an implied request to reopen the August 30, 2012 decision. (*Id.*).

The Commissioner argues that Plaintiff failed to establish that he has new and material evidence to provide good cause to reopen the August 30, 2012 decision. (Doc. 37 at 15-17).

Generally, if a claimant is not satisfied with an administrative law judge's decision, but does not request review of that decision within the applicable time period, a claimant loses the right to further review and the decision becomes final. *See* 20 C.F.R. §§ 404.987(a), 416.1487(a). However, a final decision may be reopened under certain circumstances. *Id.* If requested within twelve (12) months of the date of the initial decision, it can be reopened for any reason. 20 C.F.R. §§ 404.988(a), 416.1488(a). After the twelve (12) months has lapsed, then a decision may be reopened for "good cause" within four (4) years in the case of Title II (DIB) benefits and within two (2) years in the case of Title XVI (SSI) benefits. 20 C.F.R. §§ 404.988(b), 416.1488(b). "Good cause" exists if: "(1) New and material evidence is furnished; (2) A clerical error in the computation or recomputation of benefits was made; or (3) The evidence that was considered in making the determination or decision clearly shows on its face that an error was made." 20 C.F.R. §§ 404.989(a), 416.1489(a).

In this case, Plaintiff argues that good cause exists to reopen based upon new and material evidence. (Doc. 35 at 24). Plaintiff claims two medical records are new and material. The first are medical records from Hendry Family Care Center and the second is the consultative examination of Dr. Daryaee. (*Id.*). Starting with the Hendry Family Care Center records, these records are dated from September 22, 2011 through March 8, 2012. (*Id.*). The prior August 30, 2012 decision was decided after the date of these records. The Commissioner contends that these records from the Hendry Family Care Center were considered by the ALJ in the August 30, 2012 decision. (Doc. 37 at 16). According to the List of Exhibits for the August 30, 2012 decision, Exhibit 3F was comprised of the office treatment records from Hendry Regional

Medical Center from September 22, 2011 through March 14, 2012. (Tr. at 83). Therefore, these medical records were part of the medical records considered in the August 30, 2012 decision and are certainly not new. Accordingly, the Court finds Plaintiff failed to establish good cause to reopen the prior August 30, 2012 decision based on these medical records.

Second, Plaintiff asserts that the consultative examination by Dr. Daryaee completed on February 20, 2013 is new and material evidence. (Doc. 35 at 24-25). Dr. Daryaee performed a consultative examination. (Tr. at 242). Plaintiff provided a medical history for Dr. Daryaee dating back to a motor vehicle accident thirty (30) years ago. (*Id.* at 239). Dr. Daryaee examined Plaintiff and assessed Plaintiff with "[l]ow back pain by history;" "[r]ight knee pain by history;" and "[r]ight leg pain by history." (*Id.* at 242). Even if Dr. Daryaee's report is considered "new," it is not material because Dr. Daryaee did not assess any diagnoses himself – beyond those that Plaintiff reported in his medical history – and did not assess any functional limitations. (*Id.* at 239-42). Further, Dr. Daryaee found that Plaintiff: (1) was in no acute distress; (2) had no muscle weakness; (3) had normal motor strength in upper and lower extremities; (4) had a normal gait and a cane was not a medical necessity; and (5) had normal straight leg raises. (*Id.* at 241-42). Thus, Plaintiff failed to demonstrate that even if Dr. Daryaee's findings were considered in combination with the prior medical evidence, it would have changed the August 30, 2012 decision. Accordingly, the Court finds that Dr. Daryaee's examination records are not new and material evidence and do not support a reopening, implicit or otherwise, of the August 30, 2012 decision.

**III.    Conclusion**

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on May 16, 2017.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties

24